434 So.2d 1246 (1983)
STATE of Louisiana
v.
Jimmy RUFFIN.
Nos. 82 KA 1118, 82 KA 1119.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
*1247 Ossie B. Brown, Dist. Atty. by Brett L. Grayson, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Archie Perry, M. Michele Fournet, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
The defendant, Jimmy Ruffin, was charged with receiving a stolen United States Treasury check of a value of $898.18, in violation of La.R.S. 14:69. The defendant filed a motion to suppress the check and a Social Security card as physical evidence and a motion to suppress an oral statement and a taped statement that he gave to the police. La.C.Cr.P. art. 703. The trial judge denied these motions. The defendant pled not guilty and, after a trial by jury, was found guilty as charged. The state filed a bill of information charging the defendant as a second habitual offender pursuant to La.R.S. 15:529.1 alleging a prior conviction for simple burglary. The defendant admitted this allegation. The trial judge sentenced the defendant to ten years at hard labor in the custody of the Louisiana Department of Corrections and ordered him to pay all costs of the trial [La.C.Cr.P. art. 887(A)]. In default of payment of the costs, the defendant was sentenced to an additional one year (La.C.Cr.P. art. 884)[1]. This appeal followed.

*1248 FACTS
On March 10, 1982, at approximately 11:30 A.M., Detective William B. Denicola, a Baton Rouge City Policeman, received information by telephone from a confidential informant that Jimmy Ruffin had in his possession a stolen check in a large amount and a Social Security card in the name of the check's payee. Ruffin was at the corner of 38th Street and Cain Street in the City of Baton Rouge, Parish of East Baton Rouge, Louisiana, and was trying to get someone to go with him to cash the check. Detective Denicola had been trying to help the Treasury Department and the Sheriff's Office on some stolen checks. Detective Denicola and his partner, Detective Jay Thompson of the Louisiana State Police, proceeded to the corner of 38th Street and Cain Street where they observed the defendant and two others get into a blue Camaro automobile and drive off. The officers followed the vehicle for several blocks and stopped it. The officers drew their weapons and ordered the vehicle's occupants out and had them place their hands on the vehicle. At this time, a second police vehicle arrived carrying Officers Bourgeois and McGehee of the Baton Rouge City Police. The Camaro and the occupants of the vehicle were searched. Officer Bourgeois conducted the search of Jimmy Ruffin and discovered a United States Treasury check for $898.18 made payable to Charles Tademy, III, and a Social Security card in Tademy's name in Ruffin's right sock. Ruffin was handcuffed and verbally advised of his Miranda rights and made a short verbal statement. He was then taken to the East Baton Rouge Sheriff's narcotics office. Ruffin signed a Miranda advice of rights form and, after approximately one hour of questioning, gave a taped statement to the police officers. Ruffin indicated that the check had been stolen by an individual known to him as "Thado". He agreed to assist the police in attempting to find "Thado". The police officers agreed to release Ruffin to search for "Thado". Ruffin did not give the police any further information on "Thado" and he was re-arrested with a warrant for the crime in the instant case on March 20, 1982.

VALIDITY OF ARREST
Ruffin contends his warrantless arrest was illegal because it was without probable cause. He further contends that since the subsequent warrantless search of his person was incident to the illegal arrest, it was also invalid. He finally contends that the statements he gave to the police were products of the illegal arrest and invalid search and, thus, are also illegal. Thus, the critical issue in this case is whether or not the police officers had probable cause to effect the initial arrest of Ruffin.
The rule that a search conducted without a warrant issued upon probable cause is per se unreasonable is subject to only a few specifically established exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). One of those exceptions is the search incident to lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). An arrest is defined in La.C.Cr.P. art. 201 as follows:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330 (La.1982); State v. Wichers, 392 So.2d 419 (La.1980). When Detectives Denicola and Thompson stopped the Camaro automobile, drew their weapons, ordered the occupants of the vehicle to leave the vehicle and place their hands upon it and subsequently searched the vehicle and its occupants, an arrest occurred. Commodore, *1249 418 So.2d at 1333; State v. Drott, 412 So.2d 984, 987 (La.1982); State v. Morvant, 384 So.2d 765 (La.1980).
A peace officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. La.C.Cr.P. art. 213.[2] Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. State v. Bell, 395 So.2d 805 (La.1981). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Whether probable cause existed at the time of the arrest must be determined without regard to the result of the subsequent search. State v. Buckley, 426 So.2d 103 (La.1983).
Probable cause can be based on knowledge supplied to an officer by another person, even if the identity of the informant is kept confidential. Morvant, 384 So.2d at 768. The test used to ascertain the credibility of a confidential informant who provides facts to support probable cause to make a warrantless arrest is the same as that used to determine the credibility of information derived from a confidential informant which is contained in a search warrant. State v. Edwards, 406 So.2d 1331 (La.1981).
Prior to June 8, 1983, the United States Supreme Court had ruled that where the hearsay statements of a confidential informant formed the basis for probable cause, the State was required to show that the confidential informant was reliable and that the basis of his knowledge was credible. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This Spinelli-Aguilar "two-pronged test" was adopted in Louisiana. The "veracity" of the informant could be established by prior accurate reports or by specific independent corroboration of the facts of his instant report. The informant's "basis of knowledge" could be established by (a) direct personal observation of the informant, or (b) if the information came indirectly to the informant, the reasons in sufficient factual detail for the court to evaluate the reliability of the indirect source and of the indirectly-obtained information. Buckley, 426 So.2d at 107; State v. Elliot, 407 So.2d 659, 661 (La.1981); State v. Paciera, 290 So.2d 681, 686 (La.1974).
On June 8, 1983, in Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the "two-pronged test" of Spinelli and Aguilar in favor of a "totality of the circumstances" approach. A majority of the United States Supreme Court held that the "two-pronged test" encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that could not sensibly be divorced from other facts. The majority also determined that the rigorous inquiry required by the "two-pronged test" and the complex superstructure of evidentiary and analytical rules which evolved in interpreting this test, could not be reconciled with the fact that probable cause was usually determined on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings. The majority was of the opinion that a "totality of the circumstances" analysis would permit a balanced assessment of the relative weights of all of the various indicia of reliability (and unreliability) attendant to an informant's tip. The "veracity" and "basis of knowledge" tests were both important factors to be considered in the "totality of circumstances" analysis. At page *1250 ___, 103 S.Ct. at page 2332, the court specifically ruled as follows:
... The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed....
The State bears the burden of proving the admissibility of the defendant's statements and the admissibility of the check and Social Security card seized without a warrant. La.C.Cr.P. art. 703(D). It, therefore, follows that the State also bears the burden of showing that the police officers had probable cause to arrest Ruffin. Morvant, 384 So.2d at 768; State v. Rudolph, 369 So.2d 1320, 1325 (La.1979).
The "veracity" of the confidential informant in the instant case is established by the prior accuracy of his reports and partial corroboration of the accuracy of his instant report. Detective Denicola testified that the informant previously provided information that served as a basis for arrest in over fifty cases which resulted in between thirty to forty convictions. The information that Ruffin was at the corner of Cain and 38th Streets was corroborated by Detectives Denicola and Thompson when they personally observed him at that location getting into a vehicle with two other persons. These corroborative efforts by the police officers are significant. Gates, ___ U.S. at pages ___ _ ___, 103 S.Ct. at pages 2333-2335; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
The informant's "basis of knowledge" must be judged from the following excerpts from the testimony of Detective Denicola:
Q. Can you please relate to the court the circumstances and factual basis for that contact?
A. I received a phone call from a confidential informant that a black male by the name of Jimmy Ruffin which I was acquainted with before was on the corner of Cain and 38th Street and had a stolen check in his possession and was trying to get somebody else to go with him to cash it. And at that time
. . . . .
Q. Did that informant describe the item that he informed you about?
A. The only thing the informant told me was that he had a stolen check that he was looking for somebody to go bust with him. And it was in a large amount. I remember him saying that. At that time, I didn't question him. He didn't answer any questions. I told him I'd get back with him if it panned out and we'd get together onon the price deal. Anduhwe left immediately after uhout the office.
. . . . .
Q. Did this informant indicate where Mr. Jimmy Ruffin had this check?
A. Had it in his possession.
Q. Did this informant know for a fact based upon what he told you that the check did not belong to Jimmy Ruffin?
A. That's correct.
Q. Did he indicate to you how he knew this?
A. No. He didn't. He just said that Jimmy Ruffin had a stolen check in his possession for a large amount of money, was looking for somebody to go bust it with him, cash it.
Q. Did he say that Jimmy Ruffin asked him to help him?
A. I never asked him that. No, sir.
. . . . .
Q. Did this informant tell you when he saw Jimmy Ruffin with this check?
A. Just that he left Jimmy Ruffin wherever he was on the corner of Cain and 38th. There's a lot, a lot of *1251 people right there. I don't know if you're familiar with that corner. Everything in Baton Rouge comes to that corner.
Q. Well
A. And he called me and said that he was there now and he washad a check and he was trying to get rid of it. It was a large amount. At that time, myself and Jay Thompson was trying to help the Treasury Office and also Richard Sullivan and Steve Weber with the Sheriff's Office on some stolen checks. We thought this was going to be tied in. That's why we took off so fast out of the office. I didn't, you know, carry on a lengthy conversation with the informant. I just told him I'd get back with you if it panned out. And as we were coming down to 38th and Cain, I seen Jimmy Ruffin getting in a blue Camaro. He went around the corner on 39th Streetuhproceeded eastbound on Gus Young and I stopped him at that time in my vehicle.
. . . . .
Q. He was talking about before you went out to make the arrest.
A. No, sir. Before, all I knew that Jimmy Ruffin had evidently told somebody on the street corner that the check was hot and he was looking for somebody to go in the store and bust it with him. He had the Social Security card. He had the check. And the guy informant called me and told me that he had a check in a large amount; that it didn't belong to him and it was stolen.
The above testimony is unclear on whether or not the information reported by the informant was a result of his personal observation or obtained indirectly. However, considering the other factors in this case, this deficiency is not determinative. In Gates, ___ U.S. at page ___, 103 S.Ct. at page 2329, appears the following:
If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip....
One of the most important factors in determining if probable cause existed is satisfied when the police officers know that a crime has actually been committed. If police officers do not know that a crime has been committed, better evidence of other factors is necessary to establish probable cause. State v. Crain, 409 So.2d 603 (La. 1982); State v. Webb, 432 So.2d 362 (La. App. 1st Cir.1983). Detective Denicola testified that he and Detective Thompson were trying to help the Treasury Office and Richard Sullivan and Steve Weber of the Sheriff's Office on some stolen checks, and that they thought this check would be tied in.
Illinois v. Gates admonishes this court to make a practical, common-sense decision after considering all of the circumstances on whether there is a fair probability that evidence of a crime would be found on the defendant in the instant case. We agree with the majority of the United States Supreme Court that the "totality of the circumstances" test is the better rule. After considering all of the circumstances of this case, including the "veracity" of the informant as evidenced by his extremely reliable prior reports, the corroboration of the facts of the instant report by the efforts of the police officers, the informant's "basis of knowledge", and the fact that the police officers knew that there were ongoing investigations of stolen checks, we believe that the State has demonstrated that the police officers had probable cause to arrest Ruffin.[3] Indeed, the police officers *1252 used good, practical, common sense, acted swiftly and efficiently, and prevented Ruffin from negotiating the check and defrauding some innocent person (or the taxpayers) out of the proceeds thereof.

CONCLUSION
Because the police officers had probable cause, the arrest of Ruffin was valid. The search of his person was an incident to this lawful arrest and the seizure of the Treasury Check and the Social Security card was also valid. The statements given by Ruffin were not invalidated as being the result of an illegal arrest and invalid search and seizure.[4] The ruling of the trial court on the motion to suppress was correct. For these reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] This sentence is taken from the sentencing transcript. The court minutes reflect that the defendant was also cast for $50 in victim reparation cost. La.R.S. 46:1816(D). The offense in the instant case was committed on March 10, 1982, La.R.S. 46:1816 went into effect on July 17, 1982, and the sentence was imposed on November 10, 1982.
[2] "Reasonable cause" and "probable cause" are the same concept. State v. Linkletter, 345 So.2d 452 (La. 1977).
[3] In Gates, the "veracity" of the informant was not established by prior accurate reports and his (or her) "basis of knowledge" was not known because the "tip" was anonymous. Further, the police officers had no knowledge that a crime had been committed (other than the informant's tip). Probable cause was established by the factual details of the informant's information and substantial corroboration of these details by the police officers.
[4] The defendant does not contend that proper Miranda warnings were not given or that the statements were involuntary.