446 So.2d 1274 (1984)
STATE of Louisiana, Appellee,
v.
Dallas Clayson MORACE, Appellant.
Nos. 15651-KA, 15652-KA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
Writ Denied April 13, 1984.
*1275 Ronald J. Miciotto, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., R. Harmon Drew, Jr., Asst. Dist. Atty., Minden, for appellee.
Before HALL, JASPER E. JONES and SEXTON, JJ.
JASPER E. JONES, Judge.
In these consolidated cases the defendant, Dallas Morace, pled guilty to one count of possession of a Schedule II narcotic, namely mandrax, in violation of La.R.S. 40:967 C and to one count of possession of marijuana in violation of La.R.S. 40:966 D. Defendant reserved the right to appeal an adverse ruling on his motion to suppress the evidence against him under State v. Crosby, 338 So.2d 584 (La.1976). At a sentencing hearing defendant was sentenced to three years at hard labor and a fine of $2,000.00 was imposed and in default of payment of which he was sentenced to an additional year in the Webster Parish jail on the mandrax charge. He was sentenced to pay a $500.00 fine or serve 90 days in the parish jail on the marijuana charge. Defendant appeals the ruling on the motion to suppress and the sentence on the mandrax charge as excessive.

FACTS
On October 18, 1981 at approximately 8:00 p.m. Louisiana State Trooper John Ballance received a phone call from a confidential *1276 informant who told him the defendant was riding around the Dixie Inn area in Webster Parish in a maroon Ford LTD with several grams of cocaine in a gold looking box. The informant stated that he had personally observed the contraband in the box. The informant had given Trooper Ballance information on several occasions which had proved reliable through further police investigation. The C.I. had made one controlled purchase of narcotics for Trooper Ballance which was set up on the basis of earlier information supplied by the C.I.
Officer Ballance had defendant, who was well known by him, under investigation at the time of the call. Ballance knew the defendant had a prior drug conviction and believed him to be a drug dealer. Ballance was at the home of Webster Parish Deputy Sheriff O.H. Haynes when he received the call.[1] Ballance and Haynes were expecting the call and immediately upon receiving the call they drove to Dixie Inn in an unmarked car to place defendant under surveillance. Ballance called State Trooper Willard Flowers and requested that he join in the surveillance. Flowers, who also knew the defendant, went to the Dixie Inn area in an unmarked car. Ballance called Troop G headquarters for assistance from a marked unit. Ballance had information that defendant was always heavily armed and he wanted to be sure defendant knew it was the police in the event they attempted to stop him. Headquarters sent a marked unit manned by Trooper Tommy Baker.
When the officers arrived in Dixie Inn they observed a maroon LTD being driven in the area. It contained defendant and a male passenger. Ballance and Flowers knew defendant's car on sight and had no doubt this particular car was his. During the course of the surveillance defendant pulled into a driveway and parked in front of the home of a known drug dealer. Shortly after defendant left the driveway and pulled onto the highway, the officers stopped him. The time was approximately 8:45 p.m.
The officers approached his vehicle with guns drawn and ordered him and the passenger to get out with their hands up. Ballance took defendant to the front of the car and told him there was reason to believe his vehicle contained narcotics. Flowers took the passenger to the rear of the vehicle. Deputy Haynes looked into the car and saw the butt of a pistol and a clear plastic bag containing suspected marijuana protruding from under the armrest which separated the driver's and passenger's side of the front bench seat. Haynes also found a Crown Royal bag laying on the seat which contained suspected marijuana. When Haynes informed Ballance of what he had found, Ballance placed defendant under formal arrest.
Ballance then performed a pat down search of defendant's clothing and felt a lump in his shirt pocket. He asked defendant what it was and defendant told him it was a cigarette lighter. Ballance asked to see the object and defendant pulled it out of his pocket and threw it across the hood of his car onto the shoulder of the road. Ballance and Flowers searched the area where the object landed with a flashlight and found an amber colored vial containing a white powdery substance which appeared to be cocaine. Defendant was taken to the Webster Parish jail and a wrecker towed his car to the courthouse.
Ballance and Flowers obtained a search warrant for defendant's car. During the search another pistol was found in the glove compartment and several other guns were found in the trunk. The officers also found a small brass box, which appeared to be gold, on the floorboard. The box was found to contain three mandrax tablets and three clear plastic packets containing a white powdery substance which appeared to be cocaine. The police lab subsequently determined that the substance found in the vial and packets was methamphetamine and not cocaine.

*1277 MOTION TO SUPPRESS
Defendant contends the evidence taken from his car was illegally obtained and should have been suppressed because the officers who stopped his car did not have probable cause to believe it contained contraband.
The United States and the Louisiana Supreme Courts have held that police officers who have legitimately stopped a car and who have probable cause to believe that contraband is concealed therein may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); State v. Brooks, ___ So.2d ___ (La.1984) (rendered January 16, 1984).
Defendant contends he was subjected to an illegal investigatory stop. The record raises a legitimate question, however, as to whether defendant was subjected to a full custodial arrest from the time he was stopped instead of a mere investigatory stop. For purposes of the instant analysis it makes no difference how the initial confrontation is categorized. The bottom line is whether the informant's tip together with the other circumstances supplied the officers with probable cause to believe defendant's car contained contraband. Once the stop to search is found to be with probable cause and the search of the car produced contraband, the arrest made was with probable cause. We make this observation although the issue of the legality of the arrest is irrelevant to a consideration of the correctness of the trial court's denial of the motion to suppress.
Probable cause may be provided by an informant's tip if the underlying credibility of the informant is established. State v. Brooks, supra; State v. Burton, 416 So.2d 73 (La.1982). In a precedent breaking decision the United States Supreme Court announced last year that the credibility of the informant is to be determined from the totality of the circumstances. Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527.[2] The Louisiana Supreme Court recently adopted the Gates "totality of the circumstances" test in State v. Brooks, supra.[3]
In Brooks the supreme court decided the questions of whether the informant's tip provided probable cause to arrest the defendant and to search his car. In deciding the tip provided probable cause for both police actions, the court stated:
"... Here, the informant was known by Officer Davidson and had provided reliable information in the past leading to numerous drug related convictions. Additionally, Officer Davidson knew defendant from a prior arrest. The informant's tip was corroborated when defendant was observed where the informant stated he would be, in a car matching the informant's description. Thus, probable cause existed to arrest defendant.
Once Officer Davidson stopped defendant, he could only search defendant's car if he possessed probable cause to believe that the vehicle contained marijuana. The tip provided by a reliable informant, and corroborated by defendant's presence at the location described in the tip, could of itself have provided the necessary probable cause."
In the instant case the informant was known by Trooper Ballance and he had provided information that had proved reliable in the past through independent police *1278 investigation. The informant gave a description of defendant's car which Ballance knew from previous experience was correct and the tip was corroborated when defendant was observed riding around in the described car in the area where the informant said he would be. The informant stated to Ballance that he personally observed cocaine in a gold looking box in the defendant's possession.[4] The defendant was seen parking his car in front of the home of a man who was known to the officers to have been convicted of drug related offenses. The defendant was known by the officers to have a prior drug conviction and was suspected by them to be a drug dealer. We find that the officers had probable cause to believe that defendant's car contained contraband. They had the right to stop him and search his car and the motion to suppress was properly denied.

EXCESSIVE SENTENCE
Defendant's argument is in essence that the trial court based his sentence upon erroneous findings of fact. He also argues that the trial court erred in not granting him probation. The record reveals that the trial judge considered probation and he adequately complied with the sentencing guidelines contained in La.C.Cr.P. 894.1.
The sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982); State v. Feeback, 414 So.2d 1229 (La.1982); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983). When the sentencing judge considers the 894.1 factors and states them for the record, the determinative inquiry is: was there a manifest abuse of discretion. State v. Tully, supra.
The primary factor upon which the trial judge relied in imposing the sentence was the substantial likelihood that defendant would continue to use or deal in drugs in the future. Defendant admitted to his past use of drugs and he admitted a prior conviction for possession of marijuana. The defendant stated he had reformed and had not used any drugs during the six month period prior to his sentencing. We find no abuse of the trial judge's discretion in basing his sentence on defendant's admitted past behavior instead of on defendant's self-serving declaration at the sentencing hearing.
The legislature considers the possession of mandrax to be a serious offense. This fact is evidenced by the relatively severe maximum sentence that can be imposed on an accused for the offense. Defendant could have received a maximum sentence of five years at hard labor plus a $5,000.00 fine. La.R.S. 40:967 C(2). The three years and $2,000.00 fine actually imposed were in the statutory mid-range. We find no abuse of discretion in the trial court's sentence and the denial of probation.
The conviction and sentence are AFFIRMED.
NOTES
[1] Ballance testified that he had met with the informant earlier in the day. Presumably Ballance told the informant where he could be reached.
[2] Prior to Gates the Supreme Court adhered to a two-prong test for determining an informant's credibility. The reliability of both the informant and his information had to be shown. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The Louisiana Supreme Court followed this approach. State v. Burton, supra.
[3] Prior to the State v. Brooks decision, the La. Supreme Court cited Gates with approval in State v. Lingle, 436 So.2d 456 (La.1983). The first circuit announced it was following the Gates test in State v. Ruffin, 434 So.2d 1246 (La.App. 1st Cir.1983). This circuit cited the Gates test with approval in State v. Green, 437 So.2d 302 (La.App. 2d Cir.1983).
[4] We consider it analytically irrelevant that the substance was methamphetamine rather than cocaine. Both look similar and both are contraband.