449 So.2d 1043 (1984)
STATE of Louisiana
v.
Gloria KLEINPETER.
No. 83-KA-0842.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Rehearing Granted in Part April 3, 1984.
Writ Denied May 11, 1984.
*1044 Leon A. Picou, Jr., Dist. Atty., St. Francisville, for plaintiff.
Clayton M. Perkins, Jr., St. Francisville, for defendant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
In this appeal, Gloria Kleinpeter challenges the trial court's denial of her motion to suppress certain contraband seized from her person, pursuant to a search warrant, while she was a visitor at the Louisiana State Penitentiary at Angola, Louisiana.
Kleinpeter was indicted for introducing contraband (methaqualone) into a state prison in violation of LSA-R.S. 14:402. She pleaded not guilty at arraignment and subsequently filed a motion to suppress the seized evidence. After the adverse ruling on her motion, Kleinpeter changed her former plea of not guilty to nolo contendere, reserving her right to appeal the judgment.[1] On the basis of her new plea, the trial court sentenced her to one year imprisonment at hard labor and fined her $50.00 under the Crime Victims Reparations Act, LSA-R.S. 46:1801 et seq. This appeal followed.
No witnesses were called to testify at the hearing on the motion. But from the documents which were submitted and from the facts stipulated to by the parties and recounted by the trial court in its written reasons for judgment, the following facts emerge.
In March of 1979, as a condition for obtaining visitation rights, Kleinpeter signed a written consent form agreeing to a personal search by security personnel of the Louisiana State Penitentiary while on prison grounds. Over the following two years, Kleinpeter frequently visited inmate Harry Lovell. Some time prior to August 7, 1981, prison security received information that Lovell was to receive some drugs from a visitor on August 7. When Kleinpeter arrived early in the morning that day to visit with Lovell, prison officials asked her to submit to a search. When she refused, they detained her until they could obtain a warrant to search her person.
On the affidavit of West Feliciana Sheriff's Deputy Harry Martin, Jr., a search warrant was issued at 3:30 p.m. that afternoon authorizing a body search of Gloria Kleinpeter. The search was conducted in the office of one Dr. Gould in West Feliciana Parish. References at the hearing and in the trial judge's written reasons indicate that a body cavity search revealed "two white pills appearing to be methaqualone & one plastic package appearing to contain other drugs."
In her one assignment of error, Kleinpeter raises the same argument urged at the hearing below, namely, that Deputy Martin's affidavit is facially insufficient to establish probable cause to issue the search warrant. According to the affidavit,
A) On past visits of April 3, 1981, April 24, 1981, May 7, 1981, May 22, 1981 Gloria Kleinpeter visited inmate Harry Lovell and when Lovell left the visiting area he appeared to be intoxicated according to Security Officer Robert Marks.
B) Gloria Kleinpeter is from New Orleans, La. area and inmate Harry Lovell received a fictious [sic] letter post marked New Orleans, La. which contained Hashish.
C) Security Office [sic] Billy Travis received information throught [sic] another unnamed officer known to him who has received information from *1045 this officer in the past. This officer in the past and on this date received information from an unnamed inmate that inmate Harry Lovell was to receive drugs from a visitor on August 7, 1981. This unnamed inmate overheard a conversation by Lovell and clearly heard him state that he was to receive drugs from the visitor. This inmate has given the unnamed officer reliable information in the past. On or about July 21, 1981 said inmate reported that another inmate Ricky Manuel was to receive "amphetimines" a search was conducted of Manuel's possessions and mail and "amphetimines" were discovered per the unnamed informants instructions.
D) Gloria Kleinpeter was the only visitor requestong [sic] to see Lovell on August 7, 1981. After entering prison grounds with knowledge of possible search Kleinpeter refused to allow prison officers to search her.
Attacking the paragraphs in seriatim, Kleinpeter contends that the affidavit is based upon a chain of hearsay information supported either by informants whose basis of knowledge is not adequately established or by informants whose credibility or reliability is not established (the unnamed officer and inmate). She contends these deficiencies are fatal under the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
Prior to June 8, 1983, the United States Supreme Court had ruled that where information supplied by an informant formed the basis for probable cause to issue a search warrant, the State was required to show both the veracity of the informant and the basis of his knowledge under the Spinelli-Aguilar "two-prong test." This test was adopted in Louisiana. See State v. Ruffin, 434 So.2d 1246 (La.App. 1st Cir. 1983).
On June 8, 1983, in Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court abandoned the "two-prong test" of Aguilar and Spinelli in favor of a "totality of circumstances" approach. The Supreme Court said that while an informant's "veracity," "reliability," and "basis of information" are important factors in determining probable cause, they should not be understood as "entirely separate and independent requirements to be rigidly exacted in every case.... Rather... they should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is `probable cause' to believe that contraband or evidence is located in a particular place." Gates, ___ U.S. at ___, 103 S.Ct. at 2327-28 (footnote omitted).
The Court explained that "probable cause is a fluid conceptturning on the assessment of probabilities in particular factual contextsnot readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons." Gates, ___ U.S. at ___, 103 S.Ct. at 2328. The court further admonished that "after-the-fact scrutiny should not take the form of de novo review. A magistrate's `determination of probable cause should be paid great deference by reviewing courts.'" Gates, ___ U.S. at ___, 103 S.Ct. at 2331 (citations omitted).
Finally, the Court instructed:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.
Gates, ___ U.S. at ___, 103 S.Ct. at 2332 (citations omitted).
This court has expressly adopted the Gates approach in State v. Ruffin, 434 *1046 So.2d 1246 (La.App. 1st Cir.1983) and in State v. Sterling, 444 So.2d 273 (La.App. 1st Cir.). Thus, our duty is simply to ensure that a substantial basis supports the magistrate's conclusion that probable cause existed.
In his written reasons for judgment, the trial judge stated:
Defendant urges that the affidavit does not establish probable cause and the consent of 1979 was appropriately revoked. There are no allegations of misstatements attributed to affiant. The reliability of the security officers are not challenged. The prior consent was not uninformed. The visitor was inside the prison grounds of one of the largest penitentiaries in the United States prior to revoking consent and seeking to exercise visitation.
The only informant, not a security officer, was an inmate whose reliability was established by articulation within the corners of the affidavit.
Although standing alone, some of the individual paragraphs of the application may not meet the tests of Aguilar v. Texas, [378 U.S. 108] 84 S.C.[t] 1509 [12 L.Ed.2d 723] (1964), the common sense reading of the application in totality and paragraphs a & c caused the magistrate to find probable cause. See State v. Baker, 389 So.2d 1289 (1980).
The Courts have long recognized a detention facility is a unique place fraught with serious dangers. It is acknowledged that body cavity searches are highly intrusive and humiliating, and must be surrounded by protection which does not conflict with legitimate penological needs.
The finding of a neutral and detached magistrate upon reasonably trustworthy information and exercising reasonable caution should be paid deference by reviewing courts. See State v. Sierra, 338 So.2d 609 (1976).
We agree with the trial court's evaluation of the affidavit. A common sense, nontechnical reading of the affidavit reveals a substantial basis for concluding that Gloria Kleinpeter was attempting to introduce contraband on August 7, 1981. There was a fair probability that she had on previous visits supplied Lovell with contraband drugs (Paragraph A). Discovery of hashish in Lovell's mail had alerted prison officials that Lovell was receiving drugs from the outside (Paragraph B). An inmate, whose identity was undisclosed obviously for his own protection and whose tip on a prior occasion had led to the discovery of drugs in the possession of another inmate, provided security officials with a reasonably credible tip that Lovell was to receive drugs from a visitor on August 7, 1981 (Paragraph C). The visitor turned out to be Gloria Kleinpeter, who had previously in writing agreed to submit to a search, but refused to be searched after entering the prison grounds (Paragraph D).
Probable cause to search existed from the moment of her refusal to submit to the search. Detaining the defendant until the warrant was obtained in the interest of preventing the possible destruction of the evidence was justified under the circumstances. The detention was not, as defendant alleges, an unreasonable or excessive restraint of her liberty. We accordingly affirm the judgment.
However, we note that the trial judge illegally fined the defendant $50.00 under the Crime Victims Reparations Act. Introducing contraband is not one of the enumerated crimes in LSA-R.S. 46:1805 for which reparation may be ordered. We therefore amend the defendant's sentence to delete the fine. See LSA-C.Cr.P. art. 920. In all other respects the judgment of the trial court is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.

ON REHEARING
This rehearing is granted solely for the purpose of vacating our patent error ruling. After the decision was handed down, the trial judge below informed this court that the $50.00 was assessed not as a fine under LSA-R.S. 46:1805 but as costs under *1047 LSA-R.S. 46:1816(D), which authorizes a district court to assess $50.00 for felonies in each criminal action which results in a conviction, to be paid by the defendant and deposited into the Crime Victims' Reparations fund. Our patent error ruling was therefore in error. We accordingly vacate it and reinstate the trial court's assessment of cost.
In all other respects, the rehearing is denied.
NOTES
[1] Conditional pleas of this kind are allowed. State v. Crosby, 338 So.2d 584 (La.1976).