448 So.2d 1274 (1984)
STATE of Louisiana
v.
Jimmy RUFFIN.
No. 83-K-1698.
Supreme Court of Louisiana.
February 27, 1984.
*1276 M. Michele Fournet, Frank J. Saia, Director, Georgia Wilemon, Baton Rouge, for defendant-applicant.
Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-respondent.
BLANCHE, Justice.
Defendant, Jimmy Ruffin, was charged with receiving a stolen United States Treasury check in the amount of $898.18, in violation of La.R.S. 14:69. Defendant filed a motion to suppress the check and a metal copy of a social security card as products of an illegal search, and also filed a motion to suppress an oral statement and a taped confession given to police as products of an illegal arrest. The trial court denied both motions. Defendant was found guilty as charged by a six member jury. He was subsequently billed as a second habitual offender pursuant to La.R.S. 15:529.1 based upon a prior conviction for simple burglary. After defendant admitted the prior conviction, he was sentenced to ten years at hard labor and ordered to pay all costs of the prosecution. La.C.Cr.P. art. 887(A). Default in payment would add one year to defendant's sentence. La.C.Cr.P. art. 884.
Defendant appealed the trial court's denial of the motions to suppress the physical evidence and the statements. The Court of Appeal, First Circuit, affirmed the trial court rulings on the motions as well as the defendant's conviction and sentence. State v. Ruffin, 434 So.2d 1246 (La.App. 1st Cir. 1983). We granted writs, 440 So.2d 752 (La.1983), to consider issues raised by the defendant with regard to his arrest, the seizure of physical evidence, and defendant's subsequent oral statement and taped confession.
On March 10, 1982, at approximately 11:30 a.m., Detective William B. Denicola of the Baton Rouge City Police received a telephone call from a confidential informant that Jimmy Ruffin had in his possession a stolen check in a large amount. The informant told Detective Denicola that Ruffin was standing on the corner of 38th Street and Cain Street in the City of Baton Rouge, and was trying to get someone to go with him to cash the check. Having received reliable information in the past from this particular confidential informant which had resulted in over fifty arrests and thirty to forty convictions, Detective Denicola considered this tip to be very reliable. Detective Denicola knew the defendant and was aware of the fact that the defendant had been incarcerated in the past. Detective Denicola had, at that time, been helping the Treasury Department and the Sheriff's Office with investigations concerning stolen checks. His partner during this period was Detective Jay Thompson of the Louisiana State Police.
Based only upon the informant's information that defendant was on the corner of 38th and Cain, in possession of a stolen check of great value, and looking for someone to go with him to cash the check, Detectives Denicola and Thompson proceeded to the corner of 38th and Cain. As they approached the intersection, Detective Denicola observed the defendant getting into a blue Camaro automobile with two other persons. The detectives followed the blue Camaro for approximately two blocks and pulled it over near the corner of 40th Street and Gus Young Avenue. The detectives drew their weapons, ordered the occupants out of the vehicle, and had them place their hands on the vehicle. At that time, a Baton Rouge City Police vehicle arrived carrying Officers Bourgeois and McGehee of the Baton Rouge City Police. Both the vehicle and the occupants were then searched. Officer Bourgeois, under the observation of detective Denicola, searched Ruffin by use of a method known as a "pat down". At the time, Ruffin was wearing a shirt, shorts, shoes and light colored knee-length socks. In the course of the "pat down", Officer Bourgeois found an envelope that had been slipped completely *1277 down into the upper part of the right sock. Inside the envelope, Officer Bourgeois found a U.S. Treasury check made out to a Charles Tademy, III, in the amount of $898.18 and a metal social security card bearing Tademy's name and social security number.
At this time, Ruffin was given his Miranda rights and he gave a brief oral statement. Ruffin was then transported to the East Baton Rouge Sheriff's Office where the Metro Squad offices, to which Detectives Denicola and Thompson were assigned, were located. Ruffin was again read his Miranda rights. Ruffin then signed an advice of rights form and, after about one hour of questioning, agreed to give a taped statement. He was again advised of his Miranda rights prior to the taping of the statement. Ruffin's taped statement indicates that the check was stolen by an individual known to Ruffin only as "Thado". Thado had given Ruffin the check to cash, promising that if he cashed the check he would give him a percentage of the proceeds. The detectives, interested in apprehending Thado, agreed to release Ruffin to search for Thado. On April 20, 1982,[1] after almost six weeks during which Ruffin provided no information on Thado, the detectives arrested Ruffin for the offense charged, pursuant to a valid arrest warrant.
The principal issues before us center around the legality of defendant's arrest, and the search and seizure of evidence incident thereto. The defendant contends that his arrest was unlawful for lack of probable cause, and as such the seizures were illegal as products of a search that exceeded its legal scope. The defendant additionally contends that the oral statement and taped confession taken from him should also be excluded as the fruits of an unlawful arrest. The state contends that the check and social security card were seized as the result of a search incident to a lawful arrest.
Both state and federal constitutions prohibit unreasonable searches and seizures. U.S. Const. Amend. IV, XIV; La. Const. art. I, § 5. Implicit in this protection is a restraint upon police from approaching an individual under circumstances which make it seem that some form of detention is imminent unless police have either probable cause to arrest or reasonable grounds to detain. State v. Duplessis, 391 So.2d 1116 (La.1980); State v. Chopin, 372 So.2d 1222 (La.1979). A search incident to arrest is a recognized exception to the rule that a warrantless search is unreasonable. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Buckley, 426 So.2d 103 (La.1983); State v. Commodore, 418 So.2d 1330 (La. 1982); State v. Tomasetti, 381 So.2d 420 (La.1980). The police must affirmatively show that probable cause existed or the subsequent search does not fall within the exception. State v. Buckley, supra; State v. Zielman, 384 So.2d 359 (La.1980).
Probable cause to arrest without a warrant exists when the facts and circumstances within the officer's knowledge, or of which he had reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Edwards, 406 So.2d 1331 (La.1982); State v. Marks, 337 So.2d 1177 (La.1976). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Commodore, supra; State v. Edwards, supra; State v. Marks, supra.
The state argues that probable cause required to arrest was obtained through the information forwarded to the detectives by the confidential informant. The information that a police officer obtains from a confidential informant may *1278 contribute to the articulable knowledge necessary if the information is reliable and trustworthy. Prior to the United States Supreme Court's decision in Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), courts mechanically followed the "two-prong" test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Under this "two-prong" test, the information provided was required to include facts relating to both the "basis of knowledge" and the "veracity" or "reliability" of the information. In Illinois v. Gates, supra, the United States Supreme Court held that the mechanical execution of the two-prong test had encouraged excessive technical analysis of informants' tips and that a better standard for examining such issues is to examine the "totality of the circumstances" surrounding the tip. ___ U.S. at ___, 103 S.Ct. at 2329. However, in expressing that the test to be utilized should be an examination of the totality of the circumstances, the Court did not abandon the need for an examination of the two-prong test of Aguilar-Spinelli. Rather, instead of a mechanical application of the two-prong test, as was applied in the past, each prong should still be examined as a separate factor contributing to the totality of the circumstances. The Court made this clear in Illinois v. Gates, supra, when they stated:
[A]n informant's "veracity", "reliability", and "basis of knowledge" are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case ... Rather ... they should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place. ___ U.S. at ___, ___, 103 S.Ct. at 2327, 2328. (Footnotes and references omitted).
Thus, a confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the information and the informant's reliability, when examined under the totality of the circumstances, are established. Illinois v. Gates, supra; State v. Brooks, ___ So.2d ___ (La.1984) (No. 81-KA-3259); State v. Burton, 416 So.2d 73 (La.1982).
We cannot agree with the state's contention that the information supplied by the confidential informant, when viewed under the totality of the circumstances, established probable cause for the warrantless arrest of the defendant. Although the confidential informant was considered to be reliable by Detective Denicola, as evidenced by the informant's prior record of supplying credible information leading to over fifty arrests resulting in thirty to forty convictions, unless the reliability of the informant alone is sufficient in itself to form probable cause, there is little else upon which the officers could rely to reasonably believe that the defendant was engaged in any unlawful activity.
While an informant's past record for accuracy and reliability is one factor to take into account in determining the reliability of the tip in question, Illinois v. Gates, ___ U.S. at ___, 103 S.Ct. at 2329, this alone will not always support a finding of probable cause. Corroboration of details of an informant's tip by independent police investigation is valuable in applying a totality of the circumstances standard to these type cases. ___ U.S. at ___, 103 S.Ct. at 2334. That Ruffin was on the corner of 38th and Cain is the only fact corroborated by the detectives from the information received from the confidential informant. But while standing on the corner where the confidential informant said the defendant would be may be corroborative of the defendant's location, that fact alone does not indicate that the defendant was engaging in any illegal activity such as would furnish probable cause for an arrest. Beck v. Ohio, supra; State v. Edwards, supra. It is not even known how the informant *1279 knew that Ruffin was on the corner, how he knew the check was stolen, or that Ruffin was trying to get someone to help him cash the check. There is no indication in the informant's statement that the informant had personal knowledge of any of the information provided.[2] In fact, the only probable cause the officers had to believe that the defendant was engaged in any unlawful activity was the word of a reliable confidential informant not otherwise corroborated except as stated hereinabove. Without further corroboration, we find no probable cause for the arrest when examining this tip under the totality of the circumstances. Illinois v. Gates, supra.
We agree with the Court of Appeals, First Circuit, that:
[a]n arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330 (La. 1982); State v. Wichers, 392 So.2d 419 (La.1980). When Detectives Denicola and Thompson stopped the Camaro automobile, drew their weapons, ordered the occupants of the vehicle to leave the vehicle and place their hands upon it and subsequently searched the vehicle and its occupants, an arrest had occurred. State v. Commodore, 418 So.2d at 1333; State v. Drott, 412 So.2d 984, 987 (La. 1982); State v. Morvant, 384 So.2d 765 (La.1980). State v. Ruffin, 434 So.2d 1246 (La.App.1st Cir.1983).
As this arrest was made without probable cause, it was unlawful. Chimel v. California, supra; State v. Burton, supra; State v. Drott, supra. As such, the subsequent search which resulted in the discovery of the check and the social security card cannot be justified as a search incident to a lawful arrest. Unless the search can be justified under another exception to the warrant requirement, the motion to suppress should have been sustained by the trial court.
The state argues in the alternative that there was sufficient probable cause for an investigatory stop. Once stopped, the Detectives had the right to frisk the suspects under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The state contends that during this Terry stop and frisk, the check and social security card were lawfully found. This discovery escalated the probable cause to a level sufficient to justify an arrest.
Assuming, arguendo, that the detectives possessed sufficient articulable facts necessary to warrant a stop, the state has the burden of proof, State v. Franklin, 353 So.2d 1315 (La.1978), to show that the warrantless search of the defendant's garments was limited to that which was necessary for the discovery of weapons which might have been used to harm the detectives. Terry v. Ohio, supra.
In the case before us, Officer Bourgeois conducted the "pat down" search of the defendant which resulted in the discovery of the check and the social security card. At the suppression hearing, the only witness that testified for the state was Detective Denicola. Officer Bourgeois was not brought as a witness. Detective Denicola testified that he observed Officer Bourgeois' "pat down" of Ruffin but did not see the envelope containing the check and social security card until after Officer Bourgeois removed the envelope from Ruffin's sock. The record is devoid of any *1280 suggestion that the officer conducting the search reasonably thought that the envelope was a weapon when she felt it or that she visibly identified it as evidence or contraband before she seized it. Under such circumstances, we must conclude that there was no rational evidentiary basis upon which the trial court could find that the officer's search was confined in scope to an intrusion reasonably designed to discover a weapon. As such, we are compelled to find that the prosecution failed to carry its burden of proving that the warrantless search met the standard of a Terry search. State v. Evans, 388 So.2d 774 (La.1980).
As the state has failed to prove that the evidence upon which it relies to form the basis for the subsequent arrest and interrogation of Ruffin was seized pursuant to a lawful search, the subsequent arrest must be deemed to be unlawful. As such, the brief statement made by Ruffin at the time of the unlawful arrest, as well as the taped confession obtained an hour later, while Ruffin was in the custody of the detectives, must be suppressed as fruits of an unlawful arrest. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Scott, 389 So.2d 1285 (La.1980). We cannot say, after examining the record as to the facts surrounding the taped confession, that the confession was sufficiently attenuated from the illegal arrest to render it admissible notwithstanding the prior illegal arrest. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Wong Sun v. United States, supra; State v. Scott, supra.

CONCLUSION
We find that the initial stop of the vehicle and search of its occupants constituted an arrest without probable cause, thus unlawful. Additionally, any argument that the stop was merely investigatory in nature and the evidence seized under a Terry stop and frisk must fall as the state failed to carry its burden of proof that the search did not exceed its permissible scope. As such, the trial court erred in denying the defendant's motions to suppress both the physical evidence and the oral statement and taped confession.

DECREE
For the reasons stated, the defendant's conviction is reversed, the sentence vacated, and the case is remanded to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
LEMMON, J., dissents and assigns reasons.
WATSON, J., dissents, believing there was probable cause for the arrest.
LEMMON, Justice, dissenting.
The tip by a reliable confidential informer, whose information had previously resulted in about 40 convictions, contained a sufficient degree of detail (exact location of defendant, check in a large amount, etc.) from which the officers could have reasonably inferred that the informer had obtained his information in a reliable manner (for instance, that the informer had just seen the check or overheard defendant's conversation).[1] Since the informer's message indicated urgency, the logical inference was that the informer had just obtained the information by firsthand means. In short, the same exigent circumstances that dispensed with the warrant requirement also suggested that the information was reliable, and defendant's presence at the indicated corner moments later completed *1281 the package of sufficient probable cause to arrest.[2]
I would affirm the conviction.
NOTES
[1] The Court of Appeals opinion incorrectly recites the date of arrest as March 20, 1982. The arrest warrant, made part of the record of this case, indicates that the warrant was signed on April 20, 1982.
[2] Detective Denicola testified, as to what the confidential informant told him, as follows on cross-examination:

Q. You said you received a phone call from an informant?
A. That's correct, sir.
Q. Did that informant describe the item that he informed you about.
A. The only thing the informant told me was that he had a stolen check that he was looking for somebody to go bust with him. And is was in a large amount. I remember him saying that. At that time, I didn't question him. He didn't answer any questions. I told him I'd get back with him if it panned out and we'd get together onthe price deal. And uhwe left immediately afteruhout of the office. Motion to Suppress p. 38.
[1] If the informer's information were simply a secondhand rumor floating in the underworld, defendant would have been long gone from the scene by the time the police acted on the information. It is highly unlikely that defendant would have remained on the same corner for a considerable period of time looking for someone to "go bust" the stolen check with him.
[2] If the informer had stated he had just seen defendant with the check, the issue of probable cause would not even be close.