BYRNES, Judge.
Defendant-Appellant, Chatman Johnson, was charged by bill of information with distribution of hydromorphone (dilaudid), a violation of R.S. 40:967 and found guilty of the lesser included offense of attempted distribution. His Motion for New Trial was denied and he was sentenced to serve fifteen years at hard labor. This appeal followed.
FACTS
On or about May 20, 1982 the New Orleans Police received several tips from confidential informants that Harret Butler was dealing hydromorphone from her home at 3306 LaSalle Street. They were also told that defendant Chatman Johnson, was Ms. Butler’s supplier. Officers set up surveillance at the LaSalle Street address and observed Ms. Helen Davis leave the house and enter a waiting taxi.
The officers followed the cab to the corner of Elysian Fields and N. Claiborne where Ms. Davis exited the cab and made a call from a public phone. Upon completing the call she walked to the corner, waited about forty minutes, then placed another call. Shortly thereafter, a gray 1976 Cadillac Seville, which the officers recognized from previous experience as belonging to the defendant, picked up Ms. Davis.
They followed the car until it stopped for a traffic signal under an overpass at St. Bernard Avenue where they pulled along side the car and observed the defendant, Johnson, hand a manilla envelope to Davis. The car proceeded a short distance to a food store where Davis exited the Cadillac and entered a white Oldsmobile Cutlass which was waiting nearby. The officers then stopped Davis, placed her under arrest, informed her of her rights, and seized the envelope which was found to contain 200 Hydromorphone tablets.
After being taken to headquarters Davis made a formal statement implicating the defendant, Chatman Johnson, as her supplier. Davis was subsequently released and Johnson was then arrested and informed of his Miranda rights. While being questioned by the police, Johnson stated that he had been hesitant about making the transaction with Ms. Davis because he suspected a set up.
ASSIGNMENTS OF ERROR
Appellant, specifies four assignments of error in his brief to this court. He contends that the trial court erred:
1). In refusing to grant his motion for a new trial when the prosecutor intentionally misled the jury by stating that Ms. Davis had not talked to the District Attorney about her testimony before trial when he knew that she had.
2). In refusing to grant a mistrial or a New Trial when the State used an allegedly inculpatory statement without giving notice as required by C.C.P. Article 768;
3). In not granting a New Trial on the basis of the State’s alleged abuse of the grand jury process, and in failing to order the production of Ms. Davis’ grand jury testimony;
4). In denying his Motion to Suppress the evidence seized from Ms. Davis.
THE STATE’S CLOSING ARGUMENT
Appellant first contends that statements made by the prosecution during closing argument concerning Ms. Davis unduly prejudiced his case. He argues that these statements led the jury to believe that Ms. Davis’ testimony was spontaneous and had not been previously discussed with the District Attorney.
During closing argument the prosecutor stated:
Do you want your witnesses rehearsed by me? Do you want the State to take its witnesses through the paces like a little dog jumping through a hoop? Is that what you want? Or, do you want your witnesses up there — did you notice when Helen Davis was asked, “Did you read your statement ahead of time be *50 fore you came here?” No, she didn’t. She didn’t read her statement. Did you talk to the District Attorney ahead of time about what you were going to say on the stand”? “No.” Do you want the witnesses rehearsed as to every little detail or do you want the truth? (Excerpt from Closing Arguments, 2-3)
Contrary to the prosecutor’s statement, the record reveals that Ms. Davis did discuss her testimony with the District Attorney prior to the trial. In fact, she met with various prosecutors on several different occasions for this purpose. It was improper for the prosecutor to state that his key witness, Ms. Davis, had not talked to the District Attorney prior to trial when he knew that was not the case.
However, under the facts of this case, the trial judge’s refusal to grant a New Trial on the basis of this misrepresentation was not reversible error.
C.Cr.P. Article 921 states:
A judgment or ruling shall not be reversed by an appellate court because of any error, defect, or regularity, or variance which does not affect the substantial rights of the accused.
During trial, the jury heard the defense cross-examine Ms. Davis concerning prior meetings with the District Attorney. They heard her state that she had not reviewed her testimony with the prosecutors on the day of trial. There is no evidence indicating that Ms. Davis was ever told what her testimony at trial should be. Moreover, in charging the jury at the close of the trial, the judge made it clear that the statements of counsel in their opening and closing arguments were not evidence in the case, and that it was the jury’s duty to assess the crediability of each witness and give weight to their testimony accordingly. During his closing argument and in brief to this court, defense counsel has contended that Ms. Davis was given the details of her statement for the express purpose of making a case against the defendant. The transcript reveals that Ms. Davis’s story, relayed to the police after she was arrested, but before she met with the district attorney, was essentially the same as testimony at trial. We find no support for this contention in the record.
The jury heard the closing statements of both sides as well as the testimony of the witnesses. They were adequately instructed concerning the weight to be given to the closing remarks, their role as a fact finding body, and their duty to evaluate the credibility of the witnesses. The other evidence against the defendant included testimony of the officers who conducted the serveil-lance and arrested and questioned Ms. Davis as well as the testimony of the defendant himself.
In our opinion, this was sufficient to overcome any prejudicial effect which the prosecutor’s statement may have had on the jury. Although we strongly disapprove of the misleading nature of the prosecutor’s closing remarks we nonetheless conclude that they did not so prejudice the defendant’s case as to warrant reversal C.Cr.P. Art. 921.
THE INCULPATORY STATEMENT
By this assignment, appellant contends that the court erred in denying his Motion for Mistrial (later a Motion for a New Trial) when the prosecution failed to provide proper notice of its intent to use an inculpatory statement as required by C.Cr.P. Article 768. Appellant’s argument relates to testimony by Officer Lewis that defendant hesitated before passing the envelope to Ms. Davis. Appellant suggests that by attempting to explain this hesitation, Lewis was telling the jury that the defendant had admitted the crime. We do not agree.
Defense counsel argued for a mistrial out of the jury’s presence. He stated that no notice had been given to the defense of the state’s intent to use the statement. The state argued that it did not know that the officer was going to make such a statement. The trial judge denied the motion for a mistrial and offered to admonish the jury in this regard. The defense however, rejected this offer and requested the Court *51 to direct the prosecution not to mention or use Officer Lewis’ testimony in closing argument. The district attorney responded, that Officer Lewis’ statement was referring to his prior testimony concerning the defendant’s statement that he had hesitated completing the deal because he suspected a set up. The judge then instructed the prosecutor to limit his remarks regarding Lewis’ testimony to that earlier statement.
The defense had received timely notice of this statement and questioned Lewis extensively regarding it. During this questioning the term “hesitation” was frequently used. It is therefore unlikely that the jury took the officer’s final statement as another inculpatory remark, wholly unrelated to the previous statements concerning a set up. The court nevertheless instructed the state to limit its closing remarks so as not to mislead the jury into believing that the defendant had made another inculpatory statement. The state complied.
We find no error in the court’s denial of defense’s Motion for Mistrial and New Trial on these grounds.
MS. DAVIS’ GRAND JURY TESTIMONY
By this assignment appellant argues that the state improperly utilized the grand jury process solely for the purpose of rehearsing Ms. Davis’ testimony. He also contends that the trial court erred in failing to order the production of Ms. Davis’ grand jury testimony and in refusing to grant his Motion For a New Trial on the ground that this testimony could have been used for impeachment purposes.
A bill of information charging Johnson with distribution of hydromorphone was filed on June 16,1982. Ms. Davis, who had not been charged with any crime, was subpoenaed before a grand jury on August 5, 1982. Johnson contends that Louisiana law prohibited the District Attorney from compelling Davis to testify before the grand jury subsequent to his being formally charged.
The grand jury "... may inquire into ... offenses triable by the district court of the parish, and shall inquire into such offenses when requested to do so by the district attorney or ordered to do so by the court”. C.Cr.P. Article 437. Testimony taken before the grand jury aids in deciding whether an indictment or bill of information will be forthcoming. Thus, where a defendant has been charged and no further indictments are contemplated the grand jury should not be used to prepare witnesses for the defendant’s trial.
In the case at bar, defendant had already been formally charged when Ms. Davis testified before the grand jury. However, at the hearing on defendant’s motion for new trial, the Assistant District Attorney stated that when Ms. Davis testified, the state was not yet sure if it would charge her as well as the defendant. The record does not support appellant’s arguments to the contrary. The grand jury is expressly allowed to investigate crimes other than those specified by the District Attorney. Moreover, there was still a possibility that further indictments would arise from Mrs. Davis’s testimony. Under these circumstances we cannot say that the state misused the Grand Jury process, and will not disturb the trial court’s finding in this regard.
We also find no merit in appellant’s contention that the trial court erred in refusing to order production of Ms. Davis’ grand jury testimony for impeachment purposes. In State v. Neslo, 433 So.2d 73 (La.1983) the Supreme Court stated:
This court has also specifically interpreted Article 434 to hold that the testimony of a witness before a grand jury is inadmissble to prove a witness’ prior inconsistent statement at trial State v. Terrebonne, 256 La. 385, 236 So.2d 773 (1970); State v. Martin, supra [376 So.2d 300 (La.1979)]; State v. Sheppard, supra [350 So.2d 615 (La.1977)]; State v. Ivy, 307 So.2d 587 (La.1975). Rather, the purpose for the exception relating to perjury is to allow the perjured testimony to be introduced where the grand jury wit *52 ness is being criminally charged with penury. State v. Terrebonne, supra. 433 So.2d at 86.
In the present case Ms. Davis was not charged with perjury. Accordingly, the trial court properly denied the request for production.
MOTION TO SUPPRESS EVIDENCE
By his fourth and final assignment, appellant contends that the trial court erred in denying his motion to Suppress the hy-dromorphone tablets seized from Ms. Davis when she was arrested. He argues that because the officers lacked probable cause to arrest her the search incident to that arrest was illegal.
To be lawful, a warrantless arrest must be based on probable cause. State v. Jackson, 450 So.2d 621 (La.1984); State v. Landry, 454 So.2d 313 (La.App. 4th Cir.1984). The standards for determining probable cause for a warrantless arrest are analagous to those used for a warrant-less search. State v. Jackson, supra. Probable cause exists when the facts and other reasonable and trustworthy information within the arresting officers knowledge, are sufficient to justify the belief of a man of average caution that the suspect has committed or is committing an offense. State v. Jackson, supra; State v. Ruffin, 448 So.2d 1274 (La.1984). Information received from a reliable, confidential informant may form part of the knowledge necessary to support a finding of probable cause for a warrantless arrest “so long as the basis for the information and informant’s reliability, when examined under the totality of the circumstances, are established”. State v. Ruffin, supra at 1278. See also Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, an informant’s tip alone may not support an arrest, absent independent corroboration supplied by police investigation. State v. Ruffin, supra.
The testimony of the officers at trial and at the suppression hearing supports the following facts.
On May 18, 1982 officer Lewis received information from a reliable confidential informant, whose past tips had lead to other narcotic arrests and convictions, to the effect that he had purchased dilaudid from Johnson, at his home in the past three days. He also supplied Lewis with Johnson’s home phone number. On May 19, Officers McNeil and Palermo, received information from another reliable confidential informant, that he had purchased dilau-did in the past three days at Harriet Butler’s residence, 3306 LaSalle Street, Apt. A. He stated further that Butler told him that Johnson was her supplier. Finally, the informant indicated that Butler used a “runner” to retrieve the drugs from Johnson. Based on this information the officers set up surveillance at 3306 LaSalle Street. The events which followed have been described earlier in this opinion and corroborated to some extent the informants information.
The final act which led to Ms. Davis’ arrest was the hesitant, transfer of the envelope between Johnson and Davis which was witnessed by Officer Lewis. Being an experienced Narcotics officer, Lewis knew the actions and circumstances which may indicate a drug transaction. Accordingly, we find that the facts and circumstances surrounding the apprehension of Ms. Davis were sufficient to find probable cause for the warrantless arrest.
It is well settled that a search incident to a lawful arrest is an exception to the general requirement that a warrant is required for a legal search and seizure. State v. Ruffin, supra. As the police had probable cause to arrest Ms. Davis the search incident to that arrest which produced the evidence at issue herein was lawful. Hence, the trial court was correct in denying defense’s Motion to suppress.
CONCLUSION
Defendant’s conviction and sentence are affirmed.
AFFIRMED.
CIACCIO, J., concurring with reasons.