WARD, Judge.
Edward Jones was tried before a jury and found guilty of simple burglary. He now appeals his conviction, alleging that there was error in his trial because evidence was presented to the jury which should have been excluded. In this appeal he presents two arguments for suppression of that evidence. The first, argument is that his codefendants, Charles Bingham and Derrick Thornton, were illegally arrested; hence their statements which implicated Jones and told of the location of the stolen property seized by police should be suppressed. This same argument was considered by this Court in State v. Bingham, K-3223 (annexed to this opinion), cert. denied 463 So.2d 1264 (La.1985). In Bing-ham, we granted certiorari on the State’s application and, after considering briefs on behalf of Jones and his codefendants, reversed the Trial Courts’ ruling which had suppressed the statements and seizure of the stolen property on the grounds that Bingham and Thornton were arrested without probable cause. The record before us in the present appeal contains nothing pertinent to the illegal arrest issue beyond the evidence presented at the suppression hearing. Accordingly, inasmuch as a review of Jones’ first argument on appeal would amount to a mere reconsideration of our ruling in Bingham, we decline to consider it. We are persuaded in this result by State v. Denis, 468 So.2d 12 (La.App. 4th Cir.1985), in which the defendant pleaded guilty after this Court reversed the Trial Court’s suppression of evidence. We held that the Trial Court should not have granted the appeal in Denis which raised only the suppression issue because “the defendant has already been afforded a reasonable opportunity to be heard and because no new evidence has surfaced since the first ruling by this court....”
We consider only Jones’ second argument which was not raised in the writ application, that is, that evidence of the stolen property should have been suppressed because the police did not obtain valid consent to make a warrantless search of the apartment where the property was found. The trial transcript and that of the hearing on the motion to suppress reveal that one of Jones’ codefendants, in the course of confessing to the burglary, told *336 the arresting officers that a stolen television set had been taken to the residence of Estelle Jones, defendant’s mother. The officers testified that Mrs. Jones voluntarily invited them to look around her apartment. The officers soon left the apartment, however, because they looked only in Mrs. Jones’ living room and did not see the television set described by the arrested suspect. Later at the district station, both suspects told police of additional stolen property which they had taken to Mrs. Jones’ apartment, and the officers returned there. At the time of the second search, the officers obtained Mrs. Jones’ signature on a consent-to-search form. The officer stated that the consent-to-search form was explained to Mrs. Jones before she placed her mark on it in the presence of two bystanders who signed as witnesses. It is unclear from the transcript whether she signed the form before or after the police entered her home. It is clear, however, that she voluntarily consented to the search before it was carried out and fully cooperated in the search which led to the seizure of the stolen property.
The thrust of Jones’ argument that the consent to search was involuntary is that Mrs. Jones was intimidated by the police and that she was unable to read the consent form which she signed with her mark. The evidence does not support these contentions. One of the officers who participated in the search testified that Mrs. Jones appeared to understand the circumstances surrounding the search and did not appear frightened by the police presence in her home. Mrs. Jones testified at the hearing on the motion to suppress, and her testimony corroborated that of the police. Jones points out that his mother was elderly (sixty years old) and nearly blind. He analogizes his case to the situation in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), in which a warrantless search was held unconstitutional because police obtained consent from an elderly woman by telling her that they had a search warrant. The officers in this case made no such representation nor any other showing of apparent authority to search Mrs. Jones’ home. Mrs. Jones’ age and failing eyesight do not alone make Bumper applicable.
Jones further argues that to obtain free and voluntary consent the police should have informed Mrs. Jones that she could have refused to permit the search of her home. Although the officer testified that he could not remember whether he explicitly told Mrs. Jones that she was free to deny permission, nothing requires police to explain the right of refusal to a property owner such as Mrs. Jones whose free and voluntary consent is apparent from the circumstances. As the Supreme Court held in Schneckloth v. Bustamonte, 412 U.S. 218, 249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973), “Voluntariness is a question of fact to be determined from all the circumstances, and while the subject’s knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.”
Accordingly, we affirm Edward Jones’ conviction and sentence.
AFFIRMED.
APPENDIX
STATE OF LOUISIANA
VERSUS
CHARLES BINGHAM, ET AL
NO. K-3223
COURT OF APPEAL,
FOURTH CIRCUIT
STATE OF LOUISIANA
In Re State of Louisiana Applying for Writ of Certiorari and Prohibition to Review
Directed to: Honorable Dennis Waldron, Judge, Criminal District Court, Parish of Orleans, Section “F”, No. 303-796
We granted the State of Louisiana’s application for writs and now reverse the rulings of the Trial Court. Our review of the record of the hearing on the motions to *337 suppress and the briefs submitted by counsel convince us that the Trial Judge erred when he suppressed evidence and statements of defendants.
The record shows the following facts:
While on their beat around 7:00 a.m. on August 25, 1984, two New Orleans police officers were told by a confidential informant that a burglary had occurred earlier that morning and that two of the perpetrators were at Harry’s Bar. The informant gave the officers a description of the alleged burglars and their clothing. The officers immediately went to the bar and found two men fitting the informant’s description. The men were Charles Bingham and Derrick Thornton. The officers approached the men, told them that they were under investigation for a burglary, and because of the noise level in the bar, asked them if they would step outside. On the sidewalk in front of the bar, the officers advised the two men of their Miranda rights and further advised them that they did not have to talk with the officers and could end the conversation whenever they wished.
Derrick Thornton soon confessed to the burglary and implicated Bingham. At sometime during the questioning, the facts of the burglary were confirmed by a police radio report. Thornton and Bingham were arrested. Thornton then took the officers to the scene of the burglary and to Edward Jones’ house, where he said the stolen property was stored.
Later that day, both Thornton and Bing-ham gave the police written statements implicating Edward Jones and an unnamed juvenile. The police returned to Jones’ house, where his mother signed a police form, consenting to a search of the premises. Edward Jones was arrested at that time.
In granting the defendants’ motions to suppress all defendants’ statements as well as evidence of the stolen property seized by the police, the Trial Judge relied upon State v. Ruffin, 448 So.2d 1274 (La.1984). He applied Ruffin because he found “the initial confrontation by two of these three men with the police inside of a bar, where they were taken out, in fact constituted an arrest for which there was no probable cause ...” He then ordered that the evidence of the stolen property be suppressed pursuant to the fruit of the poisonous tree doctrine.
We disagree with this ruling. Our careful review of the facts convinces us that, rather than arrest, the police officer’s initial interview of Thornton and Bingham was merely an encounter with no Fourth Amendment implications.
In Ruffin, the Louisiana Supreme Court found facts constituting an unlawful arrest and held that, as a result, the brief statement made by Ruffin at the time of his arrest, as well as his later taped confession should be suppressed. However, the encounter between the police and Jimmy Ruf-fin was quite different from that between the police and the defendants in this case. Ruffin was ordered from a stopped vehicle by officers with weapons drawn, placed against the car and searched, as was the vehicle. The Supreme Court found that these circumstances indicated an arrest, applying the rule that “an arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of an accused.” In the present case, the circumstances do not indicate such an intent. Thornton and Bingham were not arrested until after Thornton spontaneously confessed during the conversation with the officers.
Probable cause, or even reasonable suspicion, is not required before law enforcement officers may engage in consensual questioning of individuals in a public place. As the U.S. Supreme Court recently noted in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983):
[L]aw enforcement officers do not violate the Fourth. Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in *338 evidence in a criminal prosecution his voluntary answers to such questions. See Dunaway v. New York, 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979); Terry v. Ohio, 392 U.S. 1, 31, 32-33, 88 S.Ct. 1868, 1885-1886, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring); id., at 34, 88 S.Ct., at 1886 (WHITE, J., concurring). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. Terry v. Ohio, supra, 392 U.S., at 32-33, 88 S.Ct., at 1885-1886 (Harlan, J., concurring); id., at 34, 88 S.Ct., at 1886 (WHITE, J., concurring). He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. United States v. Mendenhall, supra, 446 U.S., at 556, 100 S.Ct., at 1878 (opinion of Stewart, J.). If there is no detention-no seizure within the meaning of the Fourth Amendment-then no constitutional rights have been infringed.
There was no unlawful arrest in this case. Consequently, we find the Trial Judge erred when he granted the motions to suppress defendants’ statements as obtained pursuant to an unlawful arrest. And furthermore, the evidence of the stolen property need not be suppressed as fruit of the poisonous tree.
We find that the police had probable cause to arrest Edward Jones. However, the Trial Judge held that the manner in which he was arrested violated the rule of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Jones was arrested without an arrest warrant, and Payton holds that the Fourth Amendment prohibits police from making a war-rantless, non-consensual entry into a suspect s home in order to make a routine felony arrest. We find Payton inapplicable because the testimony of the arresting officer as well as that of Jones’ mother clearly shows that Jones was arrested in front of his home, rather than inside it. In U.S. v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the Supreme Court held that a warrantless arrest in the public vestibule of an apartment building did not violate the Fourth Amendment due to the defendant’s lessened expectation of privacy. We hold that rule applicable to the warrantless arrest of Edward Jones in front of his home. Furthermore, even if Jones was arrested inside his home, Pay-ton does not apply because his mother consented to the police entry.
Accordingly, the judgment of the Trial Court granting the motion to suppress is reversed, and this case is remanded to the trial court for further proceedings in accordance with this opinion.
New Orleans, Louisiana, this 8th day of February, 1985.
Judge Charles R. Ward
Judge Robert J. Klees
Judge Philip C. Ciaccio