ARMSTRONG, Judge.
Don Dakin pled guilty to illegal possession of stolen things, a violation of LSA-R.S. 14:39, and to possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1. Co-defendant Thomas Deese pled guilty to illegal possession of a stolen thing. Both men reserved the right under State v. Crosby, 338 So.2d 584 (La.1976) to appeal from the trial court’s denial of their motion to suppress the evidence. For the violation of LSA-R.S. 14:95.1. Dakin was sentenced to five years at hard labor without benefit of parole, probation or suspension of sentence and fined $1,000; for the violation of LSA-R.S. 14:69 he was sentenced to five years at hard labor, both sentences to run concurrently. Deese was sentenced to serve five years at hard labor.
The state filed a multiple bill against both defendants on March 14, 1985. The trial judge signed the motion for appeal on June 6, 1985. However, on June 10, 1985 the trial court dismissed the multiple bill as to defendant Deese but found that Dakin was a second offender. Consequently, Da-kin’s original sentence for the R.S. 14:69 conviction was vacated and he was sentenced as a second offender under LSA-R.S. 15:529.1 to five years at hard labor. FACTS:
On August 28, 1984, Officers Austin and Marino were in the Hibernia Bank on Chef Menteur Highway, in New Orleans conducting private business. While standing in line, they saw a van driven by defendant Dakin enter the parking lot. The officers recognized Mr. Dakin, and one of the passengers, defendant Deese, as suspects in burglary investigations they had conducted in the past. Officer Austin was aware that both defendants had prior convictions for burglary and that both had numerous arrests.
Another passenger, Charles McKenney, whom the officers did not recognize, got out of the van and entered the bank holding a yellow pillowcase containing coins. McKenney approached a bank teller, Ms. Lundsgaard, and asked to cash a check and to exchange the coins for paper currency. *346 The officers asked their bank teller to question Ms. Lundsgaard about the transaction and Mr. McKenney. After the teller made the inquiry, Mr. McKenney walked out of the bank, spoke with the defendants, then began walking eastbound in the parking lot. The defendants then drove away.
The officers, believing that Mr. McKen-ney was leaving the scene, stopped him, and after asking several questions placed him in the rear seat of the police car. Mr. McKenney told the officers that the defendants might be going to his house.
The police drove to Mr. McKenney’s residence. En route, in response to questioning Mr. McKenney told the officers that the defendants had offered to sell him a color television for $100.00. The defendant’s van arrived at Mr. McKenney’s house as the police car approached.
The officers exited from their car and approached the van. As they reached the defendants they stopped them and observed through the open door of the van two televisions, a shot gun case, tools and a tool case. The officers immediately frisked the defendants, and placed them under arrest. Subsequent to the arrest, the officers searched the van and opened the gun case, finding a weapon inside.
At the hearing on the motion to suppress the evidence Officer Austin stated that these goods are typical of property stolen in residence burglaries. Mr. McKenney identified the television as one Mr. Dakin had offered for sale earlier in the day. At that time, Mr. Dakin told Mr. McKenney that the television was “from a place far away”. Mr. McKenney also told the officers that he had previously purchased two bicycles from defendant Dakin. Mr. McKenney then consented to a search of his house where the bicycles were found. The bicycles were discovered to have been stolen.

Assignment of Error

By the defendants’ only assignment of error, they contend that the trial court erred in denying their motion to suppress the evidence.
Art. I § 5 of the La. Const, of 1974 provides as follows:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
(emphasis added).
This provision expands the scope of protection afforded Louisiana citizens by granting standing to contest the illegality of a search or seizure to “any person adversely affected.” Under Louisiana jurisprudence, any defendant against whom evidence is acquired as a result of an allegedly unreasonable search and seizure, whether or not it was obtained in violation of his rights, has standing to challenge the constitutionality of the search or seizure. State v. Gibson, 391 So.2d 421 (La.1980); State v. Walker, 430 So.2d 1327 (La.App. 3rd Cir. 1983). Accordingly, the defendants have standing to exclude the statements made by Mr. McKenney, if his “seizure” is found to be illegal, as his statements may be tainted by the allegedly illegal arrest.
In the present case, the defendants assert that the information obtained from Mr. McKenney, which was used to establish probable cause to arrest them and search the van constitutes the fruit of an unlawful arrest and makes the search and seizure of items in the van illegal and unconstitutional. We must disagree.
In State v. Culotta, 343 So.2d 977 (La.1976), the Louisiana Supreme Court held that the deterrent purpose served by the exclusionary rule does not mandate that illegally seized evidence cannot be considered in support of a finding of probable *347 cause. State v. Bearden, 449 So.2d 1109 (La.App. 5th Cir.1984).
Thus, it is apparent that the statements made by Mr. McKenney were correctly used in evaluating whether there was probable cause to stop the appellants and search their vehicle.
A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause. State v. Jackson, 450 So.2d 621 (La.App. 4th Cir.1984). Probable cause exists when the facts and circumstances within the arresting officer’s knowledge, and of which he or she has reasonable and trustworthy information, are sufficient to justify a person of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Ruffin, 448 So.2d 1274 (La.1984); State v. Johnson, 467 So.2d 47 (La.App. 4th Cir.1985). It is to be judged by the probabilities and practical considerations of everyday life on which average persons, particularly average police officers, can be expected to act. State v. Landry, 454 So.2d 313 (La.App. 4th Cir.1984).
Here the crucial inquiry is whether Officers Austin and Marino had probable cause to believe that the defendants were engaged in criminal activity. The officers witnessed Mr. McKenney walk from the defendants’ vehicle and enter a bank carrying a pillowcase full of coins. The officers recognized the defendants as suspects in burglary investigations they had conducted in the past and knew they had been convicted for prior burglaries. Mr. McKenney left the bank without his money then spoke with the defendants who then drove out of the bank parking lot. Mr. McKenney told the officers that the defendants had approached him earlier in the day and offered to sell him a color television for one hundred dollars. The defendants also asked Mr. McKenney to exchange the coins in their pillowcase for bills. Mr. McKenney saw “a bunch of property” in the van. In addition, as the officers stopped the defendants they observed in the van several televisions, a shot gun case, a tool case and other property similar to that stolen in residence burglaries.
Under these circumstances, it is clear that the officers had reasonable suspicion to stop and frisk the defendants. C.Cr.P. art. 215.1; State v. Lee, 462 So.2d 249 (La.App. 4th Cir.1984).
After the officers had arrested the defendants, Mr. McKenney stated that he had purchased two bicycles from the defendants which were located inside his residence.
The defendants also argue that the search of Mr. McKenney’s residence and subsequent seizure of the bicycles constitute the fruit of the unlawful arrest and seizure and should be suppressed.
We agree with appellants that Mr. McKenney’s arrest was unlawful because at the time the officers arrested Mr. McKenney they did not have the requisite probable cause. While the officers were aware that Mr. McKenney was in the defendants’ van and that he was buying a television from the defendants, the officers did not know whether Mr. McKenney was involved in the defendants’ suspected criminal activities. Nor was Mr. McKenney later charged with any criminal offense.
However, Mr. McKenney and his girlfriend Ms. Cahill agreed to allow the police officers to search the residence. In fact, Mr. McKenney testified at trial that he told the officers they could search the house.
When made after an illegal detention or search, consent to search, even if voluntary, is valid only if it was the product of a free will and not the result of an exploitation of the previous illegality. Among the factors considered in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. State v. *348 Owen [453 So.2d 1202 (La.1984)], supra; State v. Zielman, 384 So.2d 359 (La.1980); State v. Bennett, 383 So.2d 1236 (La.1980) (on rehearing).
State v. Raheem, 464 So.2d 293, 297 (La.1985).
Although Mr. McKenney gave consent shortly after being arrested, he was never told he was arrested and his consent was given as he was standing on his property, not while he was in the police station. In our opinion these facts, and Mr. McKen-ney’s testimony reveal that his consent to search was not an exploitation of the illegal arrest.
This assignment of error lacks merit.
ERROR PATENT
Dakin was sentenced as a multiple offender four days after the order of appeal was signed. LSA-C.Cr.P. Art. 916 provides in part that, “[t]he jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction over the matter ...”
It appears that the trial court did not have jurisdiction to impose an enhanced sentence. State ex rel Tuesno v. Maggio, 441 So.2d 1226 (La.1983). Therefore the enhanced sentence is set aside and the original sentence is reinstated. In addition, should defendant be resentenced as a multiple offender, this court reserves the defendant’s right to appeal the enhanced sentence.
For the foregoing reasons the defendants’ convictions are affirmed. Defendant Thomas Deese’s sentence is affirmed. Defendant Don Dakin’s sentence on the multiple bill is vacated and his original sentence is reinstated.
CONVICTION AND SENTENCE AFFIRMED AS TO DEFENDANT THOMAS DEESE, CONVICTION AFFIRMED, MULTIPLE BILL SENTENCE VACATED AND ORIGINAL SENTENCE REINSTATED AS TO DEFENDANT DON DA-KIN.
BYRNES, J.i dissents in part.