916 So.2d 284 (2005)
STATE of Louisiana
v.
Ryan O. HARRIS.
No. 05-K-741.
Court of Appeal of Louisiana, Fifth Circuit.
August 26, 2005.
*285 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Martin A. Belanger, Assistant District Attorneys, Gretna, Louisiana, for Respondent.
Jacque R. Touzet, Indigent Defender Board, Gretna, Louisiana, for Relator.
Panel composed of Judges JAMES L. CANNELLA, CLARENCE E. McMANUS, and JAMES C. GULOTTA, Pro Tempore.
JAMES C. GULOTTA, Judge, Pro Tempore.
In this writ application, Ryan Harris seeks review of a pretrial ruling denying his motion to suppress the evidence in his charge of possession of cocaine in violation of La. R.S. 40:967 C. The evidence was seized in connection with a warrantless misdemeanor arrest for littering. Defendant argues the arrest was invalid, and as a consequence, the cocaine found subsequent to the arrest be suppressed.
This writ application presents constitutional issues in the area of the right to privacy guaranteed by the Fourth Amendment.

FACTS
Gretna Sergeant Scott Vinson, who served approximately 10 years as a city policeman, testified he was patrolling the Derbigny area in his marked unit on November 21, 2004. It was after 11:00 p.m. when he spotted Harris and a female walking along the walking trail underneath the elevated expressway. While Vinson was stopped at a red light, Vinson saw Harris drop a plastic cup on the ground. The officer used his public address system to tell Harris to pick up the cup and place it in the trash. Harris stopped, looked at Vinson, and then resumed walking. Vinson did not, however, use his flashing lights because this was not a "take down."
Vinson drove his unit onto the walking trail and ultimately faced Harris and the female head-on. Vinson exited and asked if Harris heard the instruction to pick up the cup. Harris was "visibly nervous" and repeatedly interrupted the officer. According to Vinson, Harris did not make sense. Harris told the officer that he thought Vinson said to leave the cup. Vinson told Harris that the instruction was to pick it up and put it in the trash. He then ordered Harris to step to the unit. Harris, however, attempted to return to the cup and pick it up instead. Vinson told Harris three to five times to step to the unit. Each time, he spoke more aggressively. At this point, Vinson decided that, because he had already given Harris a warning and a break, he would now place Harris under arrest for violating the city's littering ordinance.
*286 As Harris stepped to the police unit, he placed his left hand in his left pocket. Vinson grabbed Harris' hands for safety reasons and slowly removed them. As he removed them, money and crack cocaine fell to the ground. Vinson handcuffed and secured Harris in the back of the unit. Although Vinson referred to the order that Harris place his hands on the unit as a "pat down," he explained that at that time, he was arresting Harris.
Harris testified at the hearing. He admitted he was littering. After he dropped the cup, he heard someone speak through a microphone but he could not understand what was said. When Vinson stopped him, Harris explained he did not hear him but he would pick up the cup. As he went to pick it up, Vinson threw him on to the unit and told him he was arrested. Although Harris tried to pick up the cup, Vinson refused to allow him to do so and told him he was under arrest. Harris denied placing his hands in his pocket.
At the conclusion of the hearing, the trial judge denied the motion for the following reasons:
[The officer] testified ... he was going to write the citation. He asked the Gentleman to stop. He wouldn't go back to the car. Whether the man understood or did not, he had probable cause for doing what he did. I'm not saying the man understood every word he said. In order to write the citation you have to be able to have the person stay still. He said he told the person to go to the car, he didn't go to the car."

MOTION TO SUPPRESS
By its nature, a motion to suppress challenges the constitutional validity of a seizure. See; La.C.Cr.P. art. 703 A. The State bears the burden of proving the admissibility of evidence that is seized without a warrant. The trial court's factual findings at a suppression hearing are entitled to great weight and should not be disturbed unless clearly erroneous. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1029 (rehearing denied), cert. denied, Casey v. Louisiana, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A ruling on a motion to suppress will not be disturbed absent abuse of the trial judge's discretion. La.C.Cr.P. art. 703 D; State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 574.
Louisiana Constitution Article 1, § 5 and its federal counterpart, the Fourth Amendment, prohibit unreasonable searches and seizures. State v. Ruffin, 448 So.2d 1274 (La.1984). "Implicit in this protection is a restraint upon police from approaching an individual under circumstances which makes it seem that some form of detention is imminent unless police have either probable cause to arrest or reasonable grounds to detain." Ruffin, 448 So.2d at 1276 (citations omitted). Police have probable cause to arrest without a warrant "when the facts and circumstances within the officer's knowledge, or of which he had reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime." Id.
The issue is not whether Vinson had probable cause for the arrest. Defendant admits he littered. The principal issue is whether the warrantless arrest was otherwise illegal. Defendant contends the search was illegal on both statutory and constitutional grounds. He first argues there is no statutory authority for a warrantless arrest for misdemeanor littering. In his second assignment of error, defendant argues the arrest violated his constitutional right to privacy.

*287 STATUTORY AUTHORITY

Vinson arrested Harris for violating Gretna City Ordinance 9-5, prohibiting littering. Defendant argues that, since this is silent as to police authority to arrest, arrest is not authorized for this offense. We are not persuaded by defendant's argument.
The original 1979 Gretna City Ordinance Code was updated through December 11, 1995 and then amended in 1997. The anti-littering provision has been retained since 1979. Although it has been renumbered as Section 82-4, its language has remained unchanged. The ordinance pertinently provides:
No person, whether a pedestrian or a driver or passenger in a vehicle, shall throw or deposit litter upon any public place or private premises[.]
The city's littering violation is a misdemeanor violation, and provides for punishment by a fine of up to $500.00, imprisonment for up to sixty days, or both. City of Gretna, Louisiana Code of Ordinances, No. 3146, Section 4.
Further, the City of Gretna has adopted the Louisiana Code of Criminal Procedure "as now or hereafter amended." The Code of Criminal Procedure provides a peace officer with authority to make a warrantless arrest for misdemeanor offenses under certain circumstances.
La.C.Cr.P. art. 213(1) authorizes a peace officer to arrest a person without a warrant when the person has committed a misdemeanor offense in the officer's presence and if the arrest is made immediately or in close pursuit. The 1966 Official Revision Comment indicates that the term "misdemeanor" includes municipal violations.
However, Harris argued below as well as here that another codal article applies to prohibit an arrest for littering. Defendant argues that La.C.Cr.P. art. 211.3, rather than La.C.Cr.P. art. 213(1), is applicable. Article 211.3 provides in pertinent part as follows:
A. When a peace officer has reasonable grounds to believe a person has committed an offense of littering under the provisions of R.S. 30:2531 through 2531.3 he shall issue a written citation or summons to the offender in accordance with law, commanding him to appear and answer the charge.
This article expressly applies to the State of Louisiana's littering provisions that are contained in La. R.S. 30:2531 through 2531.3. La. R.S. 30:2531 E, the State's counterpart to the Gretna ordinance, provides that an offender "shall be cited for [that statute's violation] by means of a citation, summons, or other means provided by law." That provision, unlike the city's counterpart, does not provide for imprisonment. In addition, the city's ordinance does not make a summons mandatory.
La. R.S. 30:2531.9 governs the applicability of other littering laws. It pertinently states:
B. Nothing is this Part shall be construed to affect any ordinance of any political subdivision of the State of Louisiana in effect on June 16, 1998 or to prohibit any political subdivision of the state from adopting ordinances aimed at litter control and reduction.
Since the Gretna City Ordinance was in effect in 1998, the State's littering law does not affect it.
Consequently, there is no merit to Harris' claim that the officer lacked statutory authority to make a warrantless arrest.

CONSTITUTIONAL RIGHT TO PRIVACY
We do, however, find merit in defendant's second assignment of error *288 which challenges the warrantless arrest on constitutional grounds. Defendant asserts the arrest violated his right to privacy. In support of this assertion, defendant cites two cases concerning violation of the open container law in Orleans Parish. In the lead case, State v. Hoye, 94-445 (La.App. 4 Cir. 4/14/94), 635 So.2d 1289, the evidence was seized solely pursuant to a violation of the open container law. The trial judge suppressed the evidence stating that, "[P]eople have a constitutional right to stand on the corner in that type of area with a beer can and not have to be subjected to police intrusion." Hoye, 635 So.2d at 1290. The Fourth Circuit affirmed that ruling.
In the other case, State v. Lackings, 00-423 (La.App. 4 Cir. 4/5/00), 759 So.2d 918, the defendant violated the prohibition against public intoxication. The Court, relying on Hoye, suppressed the evidence.
On the other hand, the State relies on the recent United States Supreme Court case of Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), a decision that postdated Hoye and Lackings.
In Atwater, the Court considered whether the Fourth Amendment forbids a warrantless arrest for a minor misdemeanor offense, such as a misdemeanor seat belt violation punishable only by a fine. A divided United States Supreme Court held: "If an officer has probable cause to believe that an individual has committed even a very minor offense in his presence, he may, without violating the Fourth Amendment arrest the offender." A Texas statute, which permitted police to issue citations in lieu of arrest, was at issue in Atwater. The Atwater Court rejected the argument that a warrantless arrest should occur only when it is necessary to enforce traffic laws or when there is a danger to others on the road. In doing so, that Court removed the need to balance the interests and circumstances involved in a particular situation upon finding probable cause for the arrest.
In the Louisiana Supreme Court cases that predate Atwater, the Court expressly discouraged police officers from unreasonably exceeding their lawful authority. See; State v. Breaux, 329 So.2d 696, 700 (La.1976); State v. Longlois, 374 So.2d 1208, 1211 (La.1979). In Breaux, evidence was seized in a search of a motorist stopped solely for the issuance of a summons. In finding the evidence unlawfully seized, the Breaux court stated:
In short, not every authorized detention may constitute an `arrest' which justifies incident to it a search of the person. The arrests contemplated which do justify a search of the person incident to it are full-custody arrests reasonably and lawfully made with the purpose of booking the person, La.C.Cr.P. art. 228, for the offense charged. Historically, only such an arrest has been the basis of a constitutionally authorized search as incident to it. (citation omitted) Breaux, 329 So.2d at 699
This Court applied the Breaux reasoning in State v. Guidry, 442 So.2d 1251 (La.App. 5 Cir.1983), a case predating Atwater in which the defendant was arrested for traffic violations. In Guidry, we recognized the officer's statutory authority to arrest for misdemeanor traffic offense. However, we also found that the decision to arrest was not an arbitrary one since the defendant's reckless behavior posed a danger to life or property. Id., 442 So.2d at 1252-1253
In general terms, the Louisiana Supreme Court has explained that while it gives "careful consideration to the United States Supreme Court interpretations of relevant provisions of the federal constitution, [it] cannot and should not allow those *289 decisions to replace [its] independent judgment in construing" the Louisiana Constitution. State v. Hernandez, 410 So.2d 1381, 1385 (La.1982). It recognized the State Constitution's right to privacy grants to Louisiana citizens "a higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution." Id.
More recently, however, the Court explained that it had previously "recognized that the Louisiana Constitution provides greater protection for individual rights than that provided by the Fourth Amendment in some instances." State v. Jackson, 00-0015 (La.7/6/00), 764 So.2d 64, 71. The Louisiana Supreme Court has yet to consider whether it will adopt Atwater.
This Court recognized Atwater in State v. Mercante, 02-712 (La.App. 5 Cir. 12/30/02), 836 So.2d 596 without adopting it. In Mercante, this Court considered the defendant's claim that an arrest for the misdemeanor offense of lewd conduct did not justify a full search. The defendant argued that, since in the past the Criminal Code favored a less-intrusive method than an arrest, the full search was unjustified in his case.
The Court found there was probable cause for the arrest for the violation of a Jefferson Parish ordinance prohibiting lewd conduct when the officer observed the offense. The officer was patrolling the Mardi Gras parade and saw the defendant expose his penis and urinate in a can of beer in open view of the public. The officer observed that the defendant was intoxicated. In that case, the Court found that it was reasonable to conclude that "the defendant could cause injury to himself and others ... [and] there was a reasonable likelihood that he would continue the same or similar lewd conduct, if he were not arrested and taken into custody." Id., 836 So.2d 601. Therefore, the arrest was warranted under these circumstances.[1]
The decisions of our courts in Louisiana recognize that arbitrary or noncustomary decisions to arrest might not lead to a "reasonable" search and seizure as defined in constitutional terms. Considering Louisiana cases, we conclude that an officer's exercise of the discretion to arrest for a minor misdemeanor offense must be reasonable rather than arbitrary. Accordingly, the trial judge must find that in addition to probable cause, there were circumstances requiring immediate arrest for an offense which Louisiana customarily requires only a summons for a violation of the State's littering law.
In the case on review herein, we find the search to be constitutionally unreasonable. Defendant threw a cup on the ground and failed to pick it up. There was no indication by the officer that the defendant was a threat to himself or anyone else. This is clearly an incident which would customarily require only a summons. There were no circumstances which demanded defendant's arrest.
Finding error in the trial judge's ruling, we reverse and grant defendant's motion to suppress the evidence.
WRIT GRANTED; JUDGMENT REVERSED AND RENDERED.
NOTES
[1] La.C.Cr.P. art. 211 A(2) provides that a summons, rather than an arrest is permissible when; "The officer has no reasonable cause to believe that the person will cause injury to himself or another or damage to property or will continue in the same or a similar offense unless immediately arrested and booked."